NOT FOR PUBLICATION

**FILED**

JAMES J. WALDRON, CLERK

**JULY 22, 2013**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ *Ronnie Plasner*

JUDICIAL ASSISTANT

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

In Re:

INNOVATION FUELS, INC., *et al.*

Debtors.

ERIC R. PERKINS, in his capacity as
Chapter 7 Trustee for the Estates of
Innovation Fuels, Inc. and IFI Newark, Inc.,

Plaintiff,

v.

HENRI ARIF, DEREK K. JONES, MINA
PACHECO NAZEMI, and CSFB/NYSCRF
NEW YORK CO-INVESTMENT
PROGRAM FUND 2005, L.P.,

Defendants.

Case No.:   11-12911 (DHS)

Adv. No.:   13-01009 (DHS)

Judge: Donald H. Steckroth, U.S.B.J.

**OPINION**

**APPEARANCES:**

**PORZIO, BROMBERG & NEWMAN, P.C.**
John S. Mairo, Esq.
Kelly D. Curtin, Esq.
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
*Co-Counsel for Defendants*
*Henri Arif, Derek K. Jones, Mina Pacheco Nazemi, and*
*CSFB/NYSRF New York Co-Investment Program Fund 2005, L.P.*

**GIBSON, DUNN & CRUTCHER LLP**
Mitchell A. Karlan, Esq.
Matthew K. Kelsey, Esq.
200 Park Avenue
New York, New York 10166
*Co-Counsel for Defendants*
*Henri Arif, Derek K. Jones, Mina Pacheco Nazemi, and*
*CSFB/NYSRF New York Co-Investment Program Fund 2005, L.P.*

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
Jeffrey Bernstein, Esq.
Nicole Leonard, Esq.
J. Nicole Knox, Esq.
Eliott Berman, Esq.
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
*Counsel for Eric R. Perkins, Chapter 7 Trustee for*
*the Bankruptcy Estates of Innovation Fuels, Inc. and IFI Newark, Inc.*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is a motion by the defendants Henri Arif ("Arif"), Derek K. Jones ("Jones"), Mina Pacheco Nazemi ("Nazemi," and collectively with Arif and Jones as the "Individual Defendants"), and CSFB/NYSCRF New York Co-Investment Program Fund 2005, L.P. (the "Fund," and collectively with the Individual Defendants as the "Defendants"), to dismiss the amended complaint of Eric R. Perkins, Chapter 7 Trustee for the estates of Innovation Fuels, Inc. and IFI Newark, Inc. (the "Amended Complaint" and "Trustee," respectively), for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). For the reasons set forth herein, the Motion is granted.

The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984 as amended September 18, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (F), and (H). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## FACTUAL BACKGROUND

**The Debtors and Defendants**

Innovation Fuels, Inc., ("Innovation") and IFI Newark, Inc. ("IFI," and with Innovation as the "Debtors") were in the business of refining and selling biodiesel fuel. Innovation is a registered Delaware corporation, and IFI, the wholly owned subsidiary of Innovation, is a registered Nevada corporation. The Debtors formerly conducted operations at a shared address at 126 Passaic Street in Newark, New Jersey (the "Property").

It is alleged in the Amended Complaint that the Fund, an affiliate of Credit Suisse, is an insider of both Debtors and that it provided financing to one or both of the Debtors for their

operations.  (Amend. Compl., ¶¶ 9, 13)  The Trustee alleges that the Fund took control of the Debtors by appointing the Individual Defendants, who were concurrently employees of Credit Suisse, as officers and/or directors of the Debtors.  (Amend. Compl., ¶ 14)  Specifically, the Trustee alleges that Arif served as both a senior member of the renewable energy team at Credit Suisse as well as a director of Innovation and/or IFI, the CEO of Innovation and IFI as of September 24, 2010, and, as a result, an insider of one or both of the Debtors.  (Amend. Compl., ¶ 6)  Jones is alleged to have served as a managing director at Credit Suisse as well as a director and insider of Innovation and/or IFI.  (Amend. Compl., ¶ 7)  Nazemi allegedly served as a vice president at Credit Suisse as well as a director and insider of Innovation and/or IFI.  (Amend. Compl., ¶ 8)

The Trustee further alleges that on or about July 15, 2010, a major spill occurred at the Property that released sulfuric acid causing significant damage to the Debtors at a time when they were already insolvent and were not producing any biofuel.  (Amend. Compl., ¶¶ 16, 17)  Due to the damage caused by the spill, the Debtors allegedly sought, but were denied, additional financing from Citizens Bank, which already provided financing to the Debtors.  The Citizens Bank Loan had a balance of approximately $4,641,373.52 and was guaranteed by the Fund up to $5,000,000.  (Amend. Compl., ¶¶ 18, 19)  It is alleged that the guaranty would soon be enforceable against the Fund and that, to avoid liability on the guaranty, the Fund sought and procured additional financing from Square 1 Bank on behalf of the Debtors to satisfy the loan to Citizens Bank.  (Amend. Compl., ¶ 20)  The Trustee further alleges that financing from Square 1 Bank, also guaranteed by the Fund for $5,000,000, was obtained and used to pay off the liability to Citizens Bank.  (Amend. Compl., ¶¶ 20, 22)  The Trustee further alleges that, to raise additional funds, the board of directors forced shareholders to make capital contributions to the

Debtors or face the penalty of having their equity interests diluted (the "Fundraising Proceeds"). (Amend. Compl., ¶ 24)  In total, the Trustee alleges that the Debtors, at the direction of the Defendants, incurred $950,000 of additional debt from July 15, 2010 through the time of the Debtors' bankruptcy filing in February of 2011.  (Amend. Compl., ¶¶ 30, 35)[1]

The Trustee alleges that between March of 2010 and February 2011, within the one-year time period prior to the Debtors filing, the Debtors transferred at least $252,217.75 to Square 1 Bank and Citizens Bank for interest payments on the loans guaranteed by the Fund.  (Amend. Compl., ¶ 37, Ex. B)  Additionally, it is alleged that from January 2010 through February 2011, the Debtors made payments to Arif in the amount of $45,132.50.  (Amend. Compl., ¶ 39, Ex. C)  These transfers are the focus of the Trustee's avoidance claims.

On February 2, 2011, Innovation and IFI filed voluntary petitions under Chapter 7 of Title 11 of the Bankruptcy Code.[2]  On March 24, 2011, the cases were Ordered by the Court to be jointly administered.  On February 3, 2011, the Court appointed the Trustee who filed an initial complaint against the Defendants on January 4, 2013, and the Amended Complaint on February 27, 2013.

**The Trustee's Amended Complaint**

The Amended Complaint includes the following allegations asserted against both the Individual Defendants and/or the Fund:

---

[1] It is alleged that the $950,000 of debt incurred by the Debtors in the relevant time frame consisted of $500,000 to 126 LLC, the landlord of the Debtors' leased premises, the Property, and an additional approximately $450,000 to various vendors appended to the Amended Complaint as exhibit A.  126 LLC filed its own petition for Chapter 7 relief on October 16, 2012 which was subsequently converted to a Chapter 11 case on October 26, 2012.  *See* In re 126 LLC, Case No. 12-35157 (DHS).

[2] In re Innovation Fuels, Inc., Case No. 11-12911 (DHS), and In re IFI Newark, Inc., Case No. 11-12711 (DHS).

Count I: Claims that the Individual Defendants breached their fiduciary duty by causing the Debtors, during a time of insolvency, to incur additional debt that was not in the best interest of the Debtors or their creditors, but rather the Defendants, (Amend. Compl., ¶¶ 42-46);

Count II: Claims that the Fund, fully aware of the Debtors' financial conditions, aided and abetted the Individual Defendants' breach of fiduciary duty because it had knowledge of their breach through its control of the Debtors and assisted said breach by working with and/or directing the Individual Defendants to cause the Debtors to incur the additional debt and postpone the bankruptcy filing for the Fund's benefit, (Amend. Compl., ¶¶ 47-53);

Count III: Seeks the equitable subordination of the Defendants' claims as penalty for their conduct that resulted in an unfair advantage to the Defendants, (Amend. Compl., ¶¶ 54-57);

Count IV: Seeks avoidance of the transfers to Arif and the Fund as preferential pursuant to 11 U.S.C. § 547, (Amend. Compl., ¶¶ 58-71);

Count V: Seeks avoidance of the transfers to Arif and to the extent that any Fundraising Proceeds were transferred to or for the benefit of any of the Defendants as fraudulent transfers that were made with the actual intent to hinder, delay, or defraud or where the transfers were made for less than reasonably equivalent value pursuant to 11 U.S.C. § 548, (Amend. Compl., ¶¶ 72-78);

Count VI: Seeks avoidance of the transfers that were the subject of Count V pursuant to 11 U.S.C. § 544 and N.J.S.A. 25:2-25 and N.J.S.A. 25:2-27, (Amend. Coml., ¶¶ 79-82);

Count VII: Seeks a full accounting of the Debtors' books and records of which the Defendants were in control and failed to maintain consistent with industry standards, (Amend. Compl., ¶¶ 83-88);

Count VIII: Seeks recovery of any property or asset of the Debtors that was transferred and avoided as either a preferential or fraudulent transfer pursuant to 11 U.S.C. § 550, (Amend. Compl., ¶¶ 89-92);

Count IX: Seeks disallowance of any defendant's claims who is found responsible for an avoidable preferential or fraudulent transfer pursuant to 11 U.S.C. § 502(d), (Amend. Compl., ¶¶ 93-94); and

Count X: Claims that the Trustee is entitled to the award of legal fees incurred in the pursuit of these claims pursuant to Federal

Rule of Bankruptcy Procedure 7008(b), (Amend. Compl., ¶¶ 95-97).

(Amend. Compl., ECF No. 6)

## DISCUSSION

### I.    Standard of Law

Federal Rule of Civil Procedure 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief may be granted.   Bankruptcy Rule 7012 provides that Rule 12(b)(6) applies in adversary proceedings.   Federal Rule of Civil Procedure 8 provides that pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).   Upon considering a 12(b)(6) motion to dismiss, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted).   The factual allegations contained in the complaint "must be enough to raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Furthermore, "[t]he allegations of the complaint should 'plausibly suggest' the pleader is entitled to relief." *Wilkerson v. New Media Tech. Charter Sch. Inc.,* 522 F.3d 315, 321 (3d Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1966).   The Supreme Court clarified the "plausibility" standard in *Ashcroft v. Iqbal* by holding that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)

(citation omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.*  Indeed, mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Thus, Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

In addition, a 12(b)(6) motion to dismiss may be predicated upon a plaintiff's failure to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  This Court will apply the heightened pleading requirement of 9(b) in reviewing the sufficiency of the fraudulent transfer claims in the Amended Complaint that are based on actual fraud, but not constructive fraud.  5 COLLIER ON BANKRUPTCY ¶ 548.11[1][a][ii] (Alan N. Resnick & Henry J. Sommers eds., 16th ed.) ("Most courts hold that Rule 9(b) does not apply to claims for avoidance of constructively fraudulent transfers because such claims are not based on actual fraud but instead rely on the debtor's financial condition and the sufficiency of consideration provided by the transferee.").[3]  Rule 9(b) provides that "[i]n alleging fraud or mistake, *a party must state with particularity the circumstances constituting fraud or mistake*.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b) (emphasis added).  The heightened pleading requirement serves "to provide notice, not to test the factual allegations of the claim." *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 n.2 (3d Cir. 2003).  The requirement is generally deemed satisfied by

---

[3] For support that Rule 9(b) heightened pleading standards should be applied to avoidance actions based on constructive fraud, the Defendants cite to *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997).  While the Court need not determine which standard should apply to the claims for avoidance based on constructive fraudulent transfers for this motion, notably, *GE Capital* applied Rule 9(b) to an alleged constructively fraudulent transfer pursuant to the Illinois Uniform Fraudulent Transfer Act, not section 548(a)(1)(B) of the Bankruptcy Code or the New Jersey Fraudulent Transfer Act and, thus, is not instructive in this matter.

allegations of date, place, time, and manner, or by "alternative means of injecting precision and some measure of substantiation into [the] allegations of fraud." *Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984); *In re Rockefeller Ctr. Props. Secs. Litg.*, 311 F.3d 198, 217 (3d Cir. 2002) (answering the "who, what, when, where and how" questions will satisfy the 9(b) requirement).

Rigid application of Rule 9(b) prior to discovery, however, has the potential to "permit sophisticated defrauders to successfully conceal the details of their fraud." *In re Craftmatic Secs. Litg.*, 890 F.2d 628, 645 (3d Cir. 1989) (quoting *Christidis v. First Penn. Mortgage Trust*, 717 F.2d 96, 99–100 (3d Cir. 1983)).   Thus, courts may apply the Rule with some flexibility, especially where "factual information is peculiarly within [a] defendant's knowledge or control." *In re Norvergence*, 424 B.R. at 688 (quoting *Saporito v. Combustion Eng'g, Inc.*, 843 F.2d 666, 674–75 (3d Cir. 1988), *vacated on other grounds by Combustion Eng'g, Inc. v. Saporito*, 489 U.S. 1049, 109 S. Ct. 1306, 103 L. Ed. 2d 576 (1989)).   Bankruptcy courts, in particular, will often interpret Rule 9(b) "liberally."   *Id.*   Despite the Rule's flexible nature, plaintiffs "must accompany their allegations with facts indicating why the charges against defendants are not baseless and why additional information lies exclusively within defendant['s] control."   *In re Craftmatic Secs. Litg.*, 890 F.2d at 646.   Furthermore, the Rule does not permit plaintiffs to "merely lump multiple defendants together but requires [the complaint to] . . . inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *In re Norvergence*, 424 B.R. at 688.

## II.   Counts I Through III – Breach of Fiduciary Duty, Aiding and Abetting, and Equitable Subordination

Count I alleges breach of fiduciary duty against the Individual Defendants.  Specifically, it alleges that the Individual Defendants caused the Debtors, while in a state of insolvency, to

incur additional debt that was not in the best interest of the Debtors or their creditors, but rather in the best interest of the Defendants.  (Amend. Compl., ¶¶ 43, 45)

The Defendants argue that Count I asserts a cause of action properly identified as "deepening insolvency," a cause of action not recognized under Delaware law, which they argue controls here.  (citing *Trenwick Am. Litig. Trust v. Ernst & Young, LLP*, 906 A.2d 168 (De. Ch. 2006) (hereinafter *Trenwick*), *aff'd by Trenwick Am. Litig. Trust v. Billet*, 931 A.2d 438 (Del. 2007)).  The Trustee counters with the argument that Count I is not a claim for deepening insolvency, but rather that the Individual Defendants failed to act in good faith thereby breaching their fiduciary duty.  The Trustee further argues that, if it is determined to be a cause of action for deepening insolvency, such a claim is permitted under New Jersey law, which controls this dispute based on the significant interest New Jersey has in the outcome, which is the primary concern under the New Jersey choice-of-law determination.  In response, the Defendants urge the Court to apply the "internal affairs" doctrine, which requires, even under New Jersey's choice-of-law determination, that Delaware law apply or, alternatively, that Delaware has a more significant interest in the outcome of a dispute than New Jersey.

Counts II and III are derivative causes of action seeking a finding that the Fund aided and abetted the breach of fiduciary duty because it had knowledge of, and assisted, the Individual Defendants' breach of fiduciary duty based on its control of the Debtors as well as the equitable subordination of the Defendants' claims filed against the Debtors in the bankruptcy case based on their alleged bad faith conduct.  (Amend. Compl., ¶¶ 47-57)  The Defendants argue that because there is no underlying claim for breach of fiduciary duty based on deepening insolvency, the derivative claims for aiding and abetting and equitable subordination must be dismissed.

10

Whether Counts II and III survive the Motion first requires the resolution of the legal issues raised by Count I.

The following legal issues requiring resolution are raised by Count I of the Amended Complaint and the parties arguments related thereto: (1) whether New Jersey or Delaware law is controlling in the Court's determination of the state law claims in this adversary proceeding; (2) whether the claim asserted by Count I is one for breach of fiduciary duty or "deepening insolvency;" and (3) whether the Amended Complaint contains sufficient allegations to support the plead cause of action such that it can survive a motion to dismiss under Rule 12(b)(6).

### a.     **Choice of Law**

The parties argue whether the Amended Complaint alleges a claim for breach of fiduciary duty or for deepening insolvency.   In either case, the cause of action is governed by state substantive law and, thus, a choice-of-law analysis is required.   *See Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.,* 313 U.S. 487, 496 (1941).   Furthermore, the choice-of-law analysis may have a dispositive effect on whether the Trustee's cause of action asserted in Count I, discussed further in section II.b. below, is recognized or must be dismissed as a matter of law.[4]

---

[4] It is clear from the case law cited by the parties that Delaware law does not recognize an independent cause of action for "deepening insolvency."  *See Trenwick America Litig. Trust v. Ernst & Young, LLP*, 906 A.2d 168, 204 (Del. Ch. 2006), *aff'd by Trenwick Am. Litig. Trust v. Billet*, 931 A.2d 438 (Del. 2007) (there is no obligation to liquidate insolvent company and decisions to incur more debt are protected by the business judgment rule).   By contrast, the parties disagree as to whether a claim for "deepening insolvency" is recognized under New Jersey law.  *Compare NCP Litig. Trust v. KPMG*, 399 N.J. Super. 606, 618–22 (N.J. Ch. Div. 2007) (discussing whether plaintiff alleged a viable cause of action based on deepening insolvency), *with Bondi v. Citigroup, Inc.*, 32 A.3d 1158, 1164 (N.J. Sup. Ct. App. Div. 2011) (holding that deepening insolvency is not a viable cause of action under New Jersey law).

When confronted with a conflict of law in a tort case,[5] New Jersey applies the Second Restatement's most significant relationship test.  *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008).  "Under that standard, the law of the state of the injury is applicable unless another state has a more significant relationship to the parties and issues."  *Camp Jaycee*, 962 A.2d at 460; *see also* Restatement (Second) of Conflict of Laws § 145(1) (1971).  However, notwithstanding the foregoing standard, due to the nature of the matter at issue and the parties involved, choice of law is more aptly resolved through consideration and application of the internal affairs doctrine.  *See Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d Cir. 2005).  As articulated by the Supreme Court,

> the internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands.

*Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) (citing Restatement (Second) of Conflict of Laws § 302, Comment *b*, pp. 307-08 (1971)).  The internal affairs doctrine states that "[t]he local law of the state of incorporation will be applied to determine such issues, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied."  Restatement (Second) of Conflict of Laws § 302(2).

Accordingly, where there is no more significant countervailing interest, "[u]nder New Jersey's choice-of-law rules, the law of the state of incorporation governs internal corporate affairs."  *Fagin*, 432 F.3d at 282.  Such matters include those involving claims for breach of

---

[5] Both breach of fiduciary duty and deepening insolvency are considered tort actions.  *See Wolfson v. Bonello*, 637 A.2d 173, 181 n.12 (N.J. Sup. Ct. App. Div. 1994); *see also NCP Litig. Trust v. KPMG*, 399 N.J. Super. at 624.

fiduciary duty. *In re Midway Games Inc.*, 428 B.R. 303, 312-13 (Bankr. D. Del. 2010) (citing *Edgar*, 457 U.S. at 645) ("Few, if any, claims are more central to a corporation's internal affairs than those relating to alleged breaches of fiduciary duties by a corporation's directors and officers."); *Fry v. Trump*, 681 F. Supp. 252, 255-56 (D.N.J. 1988) ("Claims involving the 'internal affairs' of corporations, such as breach of fiduciary duty and the like, are subject to the laws of the state of incorporation."). Therefore, the Court will follow the default rule and apply the law of the state of incorporation unless it determines that another state holds a more significant interest in the resolution of the dispute.

Here, the claims against the Individual Defendants, as officers and directors of the Debtors, for breach of fiduciary duty clearly address the internal affairs of the Debtors. The laws of Delaware, the state of incorporation, therefore control unless New Jersey is shown to have a more significant interest. To determine whether there is a sufficiently greater countervailing interest in resolution of the issue, the following contacts are to be considered and ascribed appropriate weight by the Court:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any between the parties is centered.

Restatement (Second) of Conflict of Laws § 145(2).

Unlike more conventional torts, a breach of fiduciary duty by an officer or director based on actions causing the corporation to incur additional debt is not manifested through identifiable physical conduct or harm. As such, the corporation sustains an injury in the state of incorporation and wherever it has offices. *Grynberg v. Total Compagnie Francaise Des*

*Petroles*, 891 F. Supp. 2d 663, 680 (D. Del. 2012); *Pricaspian Development Corp. (TEXAS) v. Royal Dutch Shell, PLC*, 2009 WL 1564110, at *8 (S.D.N.Y. June 3, 2009).   Innovation has sustained injury in Delaware and New Jersey, and IFI has sustained injury in Nevada and New Jersey.   It is equally difficult to ascertain where the conduct causing the injury occurred.   The Individual Defendants, as well as the Fund, have offices in New York.   As highlighted by the Defendants, there is no allegation or evidence that any of the Individual Defendants ever visited or conducted any actions from any location other than New York.   The center of the relationship between the Debtors and Defendants is best placed in New Jersey, the location of the Debtors' operations.

Considering the number of states holding a possible interest in the resolution of the issues and the intangible nature of the cause of action and harm, efficient resolution favors application of the general rule: the Court's application of the law of the state of incorporation.   Delaware is the state of incorporation of Innovation and IFI, while incorporated in Nevada, is the wholly owned subsidiary of Innovation.   The Court will therefore apply Delaware law in its determination of the state law claim based on the internal affairs of the Debtors, namely Count I alleging the Individual Defendants' breach of their fiduciary duties.   The remaining claims are subject to the Bankruptcy Code.

> **b.**     **Breach of Loyalty or "Deepening Insolvency"**

In support of their motion to dismiss Count I, and Counts II and III as derivative of Count I, the Defendants rely heavily on the argument that the Trustee has asserted and disguised a claim for deepening insolvency as one for breach of fiduciary duty.   The parties agree that deepening insolvency is not a recognized cause of action under Delaware law, which controls in

this matter.  The issue, therefore, is whether the Trustee is, as it contends, asserting a cause of action for breach of fiduciary duty or one for deepening insolvency.

Under *Trenwick*, *supra*, 906 A.2d 168, and cases following including *Midway*, *supra*, 428 B.R. 303, and *In re Fedders North America, Inc.*, 405 B.R. 527 (D. Del. 2009), it is clear that officers and directors are afforded significant deference in the decisions they make, even if those decisions involve incurring additional debt at a time when the corporation is insolvent.  *See, e.g.*, *Trenwick*, 906 A.2d at 205; *Midway*, 428 B.R. at 315–16; *Fedders*, 405 B.R. at 541.  However, those cases, in dismissing the plaintiffs' complaints for pursuing a cause of action for deepening insolvency, did so on the finding that directors or officers were acting with due diligence and good faith in pursuing a business strategy that would increase the corporation's value or prolong the corporation's viability.  In *Trenwick*, the court stated the following:

> [i]f the board of an insolvent corporation, acting with due diligence and good faith, pursues a business strategy that it believes will increase the corporation's value, but that also involves the incurrence of additional debt, it does not become a guarantor of that strategy's success.

*Id.* at 205.  However, the court further stated that,

> [t]he rejection of an independent cause of action for deepening insolvency does not absolve directors of insolvent corporations of responsibility.  Rather it remits plaintiffs to the contents of their traditional toolkit, which contains, among other things, causes of action for breach of fiduciary duty and for fraud.

*Id.*  The court held that the plaintiff had not stated a viable claim for breach of fiduciary duty.  In its review of the plaintiff's complaint, the court found that the counts were based primarily on the alleged conduct of the debtors' directors in forcing the debtors to pledge their assets to cover the liabilities of a related entity, thus, rendering them insolvent.  *Id.* at 187–88.  Those commitments and the related conduct were seen as the foundation for the plaintiff's breach of fiduciary duty and loyalty claims, which, the court determined, lacked any factual support

15

independent of the claims of deepening insolvency. *Id.* at 205–06. The complaints that were dismissed in *Midway* and *Fedders* were similarly lacking. Notably absent from the complaints were sufficient allegations that the directors or officers were breaching their duty in a manner other than incurring additional debt while the corporation was insolvent. Essentially, it was only alleged that the directors and officers engaged in a failed business strategy.

Here, the Trustee alleges more, claiming that the Individual Defendants acted in bad faith and in their own interest and that of the Fund rather than the Debtors and the Debtors' creditors. (Amend. Compl., ¶¶ 34, 45, 52) Allegations that the Individual Defendants failed to act in good faith and acted in the interest of themselves and the Fund distinguishes the Amended Complaint from that in *Trenwick*. To dismiss Count I of the Amended Complaint under the rule of *Trenwick* requires that the directors or officers acted in good faith and in the interest of increasing the value of the corporation when they engaged in conduct or made decisions that resulted in continued or deeper insolvency. The good faith of the Individual Defendants is precisely what is contested by the Trustee and, therefore, the Trustee is free to pursue a cause of action for breach of fiduciary duty against them. Without making any determination as to the sufficiency of these allegations and their ability to survive the motion to dismiss, it is clear that the Amended Complaint contains allegations beyond that of a failed business strategy. Furthermore, at oral argument, the Trustee represented that he is indeed pursuing a claim for breach of fiduciary duty based on the bad faith and self-interested conduct of the Individual Defendants. For these reasons, the Court will measure the sufficiency of the claim asserted in Count I as one for breach of fiduciary duty under Delaware law.

c.      **Whether the Allegations of the Complaint Survive a Motion to Dismiss**

Under Delaware law, directors and officers of a Delaware corporation owe the corporation and its shareholders a "triad" of duties. *Fedders,* supra, 405 B.R. at 539 (citing *Malone v. Brincat,* 722 A.2d 5, 10 (1998)). The triad is composed of the duty of care, the duty of loyalty, and the duty to act in good faith. *Id.* The Delaware Supreme Court has stated that this "triparte fiduciary duty does not operate intermittently but is the constant compass by which all director actions for the corporation and interactions with its shareholders must be guided." *Id.* Reading the Amended Complaint in a light most favorable to the Plaintiff, the Court will consider the breach of fiduciary duty claim of Count I as both a breach of loyalty and, alternatively, a failure to act in good faith.

The duty of loyalty "mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." *Fedders*, 405 B.R. at 540 (citing *Cede & Co. v. Technicolor, Inc.,* 634 A.2d 345, 361 (Del. 1993)). "To state a legally sufficient claim for breach of the duty of loyalty, plaintiffs must allege facts showing that a self-interested transaction occurred, and that the transaction was unfair to the plaintiffs." *Id.*

The duty to act in good faith is a subsidiary element of the duty of loyalty. *Fedders*, 405 B.R. at 540 (citing *Stone v. Ritter,* 911 A.2d 362, 370 (Del. 2006)). "The behavior that must be shown to prove a violation of the duty to act in good faith requires conduct that is qualitatively different from, and more culpable than, the conduct giving rise to a violation of the fiduciary duty of care (i.e., gross negligence)." *Id.* (internal citations omitted). By way of illustration, the Delaware Supreme Court has identified three examples of conduct that may establish a failure to act in good faith:

such a failure may be shown where a director intentionally acts with a purpose other than that of advancing the best interests of the corporation. Second, it has held that a failure may be proven where a director acts with the intent to violate applicable positive law. Third, it has held that a failure may be shown where the director intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties. The court noted, however, that this list of examples is not necessarily exclusive.

*Id.* (citing *In re Walt Disney Co. Derivative Litig.,* 906 A.2d 27, 67 (Del. 2006)).

In opposing the Defendants' motion, the Trustee directs the Court to a number of allegations set forth in the Amended Complaint. First, paragraphs 31 through 35 of the Amended Complaint allege that the Individual Defendants acted in the interest of the Fund rather than the Debtors by incurring additional debt that allowed them to postpone the bankruptcy filing for an additional seven months. The alleged benefit to the Fund is financial as the postponment delayed its obligation on the Debtors' loan with Square 1 Bank that would be triggered once the Debtors filed for bankruptcy. (Amend. Compl. ¶¶ 31-35) Paragraph 45 merely echoes the same allegations stating that this delay was not in the best interest of the Debtors but rather the Individual Defendants and the Fund. (Amend. Compl., ¶ 45) Paragraphs 51 and 52 support Count II for aiding and abetting and repeat that the Fund believed it would suffer damage if the Debtors filed for bankruptcy protection at an earlier point in time . . . ." (Amend. Compl., ¶¶ 51, 52)

The allegations fail to sufficiently plead a cause of action for breach of fiduciary duty. At best, whether considered to support a cause of action for breach of loyalty or, alternatively, a failure to act in good faith, the allegations amount to no more than conclusory statements without any factual or reasoned support. There is no support for a cause of action based on self-dealing. Any benefit conferred to the Individual Defendants is tenuous. According to the Trustee, the Individual Defendants' conduct as officers and directors of the Debtors by merely delaying the

bankruptcy for the benefit of the Fund makes them culpable as failing to act in the interest of the

Debtors.   Whether the Individual Defendants caused the Defendants to file their petitions for

relief in July of 2010 or February of 2011 did not change or mitigate the Fund's obligation for

the Debtor's outstanding loans.   The Trustee's allegations neither indicate how such a delay

benefited the Individual Defendants nor do they lend sufficient support to Count I as a breach of

the duty of loyalty to survive the Defendants' Motion.

Similarly, the Trustee has not alleged any facts that would support a finding that the

Individual Defendants breached their duty to act in good faith.   That the Individual Defendants

incurred additional debt does not create an inference that they intended to benefit the Fund rather

than the Debtors.   Moreover, the Court will not draw that inference based on a bald assertion that

such intent existed.   A corporation taking on debt in an attempt to find its way back to solvency

and profitable operations is a regular and almost necessary exercise for a financially troubled

corporation.     Additionally, the Amended Complaint lacks allegations that the Individual

Defendants knowingly violated an applicable law or duty.   The Individual Defendants were not

under a duty to file for bankruptcy at any time while acting as directors and officers nor does the

Trustee make that allegation.   The Amended Complaint contains insufficient allegations to

overcome the Defendants' Motion with respect to Count I for breach of fiduciary duty.

### III.    Count IV – Preferential Transfers

Count IV seeks the avoidance of preferential transfers to Arif and the Fund.  Specifically,

it seeks the avoidance of $45,132.50 in payment to Arif for "work performed," (Amend. Compl.,

¶¶ 39, 74, Ex. C), and $252,217.75 to Square 1 Bank and Citizens Bank for interest on the loans

made to the Debtors for which the Fund was a guarantor, (Amend. Compl., ¶¶ 37, 60).  A claim

to avoid a preferential transfer requires that the Trustee demonstrate that the transfer was: (i) "to

or for the benefit of a creditor;" (ii) "for or on account of an antecedent debt owed by the debtor

before such transfer was made;" (iii) "made while the debtor was insolvent;" (iv) made on or

within 90 days before the date of filing or within a year before filing if the transfer was to an

insider; and (v) enable the creditor to receive more than it would have in a chapter 7 liquidation.

11 U.S.C. § 547 (b).[6]

a.      **Claim for Avoidance of Preferential Transfers to Arif**

The Defendants argue that the Trustee has failed to sufficiently allege that the transfer to

Arif was on account of an antecedent debt as required by section 547.  Relying on *In re Lev*, 05-

35847 (DHS), 2009 WL 2905377, at *5 (Bankr. D.N.J. Aug. 12, 2009), the Defendants contest

the sufficiency of the pleadings under Rule 8 as the allegations set forth only that the payment

was on account of "services rendered" or "work performed."  The Trustee counters, relying on *In

re Oakwood Homes Corp.*, 340 B.R. 510 (Bankr. D. Del. 2006), that it need only to plead

sufficient facts to allow the court to infer a plausible claim and that the Complaint sufficiently

alleges that Arif was paid for the work he performed in the past, thereby, satisfying the Rule 8

standard.  (Amend. Compl. ¶ 65)

Importantly, *Oakwood Homes* was decided prior to *Twombly* and *Iqbal*.  Indeed, the

complaint in *Oakwood* contained specific details about the agreement, relationship between the

parties, and the transfers.  Here, while there is identification of the transfers, there is no such

explanation of "the identity of contracts between the parties or any description of goods or

services exchanged."  *See In re Tweeter Opco*, 452 B.R. 150, 155 (Bankr. D. Del. 2011) ("The

Complaint provides no detail of any relationship between the Debtors and Mitsubishi such as the

identity of contracts between the parties or any description of goods or services exchanged.

---

[6] Because Arif and the Fund are alleged recipients of preferential transfers as well as insiders,
(Amend. Compl., ¶¶ 6, 9), the Court utilizes the one-year period for transfers to these parties.

Without such information, the Court determines that the Trustee has failed to describe sufficiently the nature of the antecedent debt.")  To survive a motion to dismiss, a complaint must specifically identify the nature and amount of each antecedent debt.  *In re Valley Media, Inc.*, 288 B.R. 189, 192 (Bankr. D. Del. 2003).  In *In re Lev*, this Court stated,

> [t]he Trustee has not established, however, that the transfer was "for or on account of an antecedent debt owed by the debtor before such transfer was made."  11 U.S.C. 547(b)(2).  "Although 'antecedent debt' is not defined by the Code, a debt is 'antecedent' if it is incurred before the transfer: the debt must have preceded the transfer."  *Collier* ¶ 547.03 at 547-35.  As part of the Defendant's defense, he claims the money was transferred to him as payment for services previously provided to the Debtor.  However this is not, by itself, enough to establish that the payments were made for antecedent debt.

*In re Lev*, 2009 WL 2905377, at *5.  In contrast to the Motion presently before the Court, the *Lev* opinion determined an issue on motion for summary judgment.[7]  While the nature of the motion in *Lev* sought to determine a factual issue, the statement of law endures.  The Trustee must allege sufficient facts to, at a minimum, demonstrate plausibility that the transfers to Arif were on account of an antecedent debt, such as the identity of contracts or the goods or services exchanged.

---

[7] *See In re Lev*, 2009 WL 2905377, at *5 ("In a summary judgment action, the burden is on the moving party.  The Trustee has not come forward with sufficient evidence to show that the debt being paid was antecedent as opposed to in the ordinary course of business or a contemporaneous payment for services rendered.  On the contrary, as part of the Trustee's fraudulent transfer claim, the Trustee argues that there is no evidence of any services being rendered by the Defendant.  Thus, a major issue in this case is whether or not the Defendant was providing services to the Debtor and if he was, the extent of these services.  As such, the Court finds that there is a genuine issue of material fact concerning whether the transfers were for antecedent debt.  This is a question better left for trial.  At trial, witnesses may testify before the Court and findings of fact on this issue can then be made.").  Also note, similar to *In re Lev*, the Trustee here also asserts the alternative argument in Count V that Arif may never have performed any work and was never owed compensation and, thus, the transfer is subject to avoidance as fraudulent.  *See* Amend. Compl., ¶ 74.

Here, the Trustee has failed to allege sufficient facts to survive the Defendants' motion to dismiss the preferential transfer claim against Arif.  The Amended Complaint alleges that eight transfers were made to Arif between February 3, 2010 and January 31, 2011 totaling at least $45,132.50 "for work he allegedly performed for the Debtors."  (Amend. Compl., ¶¶ 59, 65; Ex. C)  The Amended Complaint is void of facts to raise above a speculative level that the payments were on account of an antecedent debt as opposed to contemporaneous and in the ordinary course of business.  Even taking the allegations as true and in a light most favorable to the Trustee, they do not "plausibly suggest" that the transfers were made on account of an antecedent debt.  Moreover, at oral argument, counsel for the Trustee admitted there was no support in the Amended Complaint to ascertain whether the transfers were contemporaneous with services provided or on account of an antecedent debt.  Counsel's candor is commendable in this regard.  For these reasons, the Motion is granted insofar as it seeks to avoid the transfers to Arif as preferential under section 547 of the Code.

**b.  Claim for Avoidance of Preferential Transfers to Square 1 Bank for the Benefit of the Fund**

The Defendants argue that the Complaint fails to allege how the Fund benefited from the transfer of funds to Square 1 Bank or Citizens Bank because the loan balance exceeds the Fund's guaranty cap of $5 million.  Additionally, the Defendants argue that the transfer did not result in the Fund receiving anything greater than it would under a Chapter 7 liquidation because the banks had a senior secured loan on the Debtors' assets that would be satisfied first if any assets were returned to the estate.  The Trustee counters that there is a question of fact precluding dismissal because it is premature to determine whether or not the contingent liability of the Fund, based on its guaranty, is capped at $5 million.  The Trustee argues that, based on the Loan documents submitted by the Defendants in support of the Motion, the guaranty cap could have

22

been increased with the consent of the Fund and it is unknown whether consent was ever given, requiring additional factual discovery and rendering the motion to dismiss premature. Additionally, the Trustee argues that the secured status of the banks is not settled in light of the equitable subordination it seeks in Count III.  The Trustee contends that if the relief of equitable subordination is granted, the Fund's claim may not be secured, thereby, rendering any pre-petition transfers received by the Fund on account of the previously secured loan greater than the distributions the Fund would be entitled after a Chapter 7 liquidation.

There is an economic benefit to a guarantor if the guarantor's contingent liability is reduced.  *In re Cannon Ball Indus., Inc.*, 155 B.R. 177, 179 (N.D. Ill. 1993) (citing *In re Erin Food Serv. Inc.*, 90 F.2d 792, 801-02 (1st Cir. 1992)).  Further, the *Cannon* court rejected the contention that there is a preference based on a "potential benefit."  *Id.* at 180.  For a benefit to be conferred on a guarantor subject to a preferential transfer action, there must be a direct benefit such that there is a finding that the contingent liability under the guaranty is reduced on account of the alleged transfer.  *Id.*

Based on the proof of claim filed, the Debtors' existing obligation to Square 1 Bank is $5,061,863.85, which exceeds the Fund's guaranty on the loan capped at $5 million.[8]  Mere speculation raised by the Trustee that consent to increase the cap *may* have been given, without any factual support alleged in the Amended Complaint that such consent was given, does not raise the claim to a plausible level in accordance with Rule 8's pleading standard.  In light of

---

[8] The Court may consider the proof of claim in its determination of the Motion.  It is permitted to consider extrinsic evidence such as (1) documents that were expressly referred to and relied upon the Trustee in his Amended Complaint, (2) documents integral to the Trustee's claims, (3) facts subject to judicial notice, (4) matters of public record, and (5) documents filed by the Debtors with this Court.  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).  These include documents filed with this Court in the Debtors' jointly administered bankruptcy case, such as the Square 1 Loan and Security Agreement from the claims register and the Square 1 Bank and Citizens Bank guaranties.

these facts and the dismissal of the Trustee's claim for the equitable subordination of the Fund's

claim in Count II, the Trustee cannot sustain a preference action against the Fund. The Fund

received no benefit because its contingent liability on the loan was not reduced. *See In re*

*Cannon Ball Indus., Inc.*, 155 B.R. at 1. The Trustee has failed to state a claim upon which relief

may be granted. Thus, the Motion is granted insofar as it seeks to dismiss the claims to avoid

transfers to Citizens Bank or Square 1 Bank for the benefit of the Fund as preferential.

## IV.    Counts V and VI - Fraudulent Transfers and Conveyances

Counts V and VI assert causes of action to avoid fraudulent transfers pursuant to

11 U.S.C. §§ 548 and 544 under N.J.S.A. 25:2-25 and/or 25:2-27. The Defendants argue that

these claims must be dismissed because the Trustee fails to: (i) allege intent to defraud or any

badges of fraud with any level of particularity as required by Rule 9(b); (ii) identify any transfers

of the Fundraising Proceeds or excess revenues; (iii) show that there was insolvency at the time

of any alleged transfers; or (iv) allege that the Debtors received less than reasonably equivalent

value or that any transfers actually occurred. To counter, the Trustee relies on this Court's prior

statement that,

> bankruptcy courts have afforded greater liberality in adversary
> complaints brought by trustees, because a trustee pleads under a
> great disability due to his role as a third-party outsider to the
> fraudulent transaction, that must plead fraud on second-hand
> knowledge for the benefit of the estate and all of its creditors.

*Forman v. Cornerstone Realty Agency, LLC*, 06-02123 (DHS), 2006 WL 2990467, at *1 (Bankr.

D.N.J. Oct. 19, 2006). The Trustee contends that the case at bar is one in which the standard

must be relaxed due to the poor condition of the Debtors' books and records. With this in mind,

the Court turns to the Defendants' arguments.

24

### a.   Whether the Complaint Contains Allegations of Actual Intent or Badges of Fraud

In response to the Defendants' argument that the Amended Complaint fails to allege fraudulent intent to defraud, the Trustee argues that there are adequate allegations set forth in paragraphs 15, 24-29, 39, and 72-82 of the Amended Complaint. (Trustee's Opp'n, p. 23) Additionally, the Trustee argues that the Amended Complaint contains sufficient badges of fraud to find intent including: (i) the close relationship between the Debtors and the transferee, (ii) the Debtors' insolvency, and (iii) the poor condition of books and records, the unknown whereabouts of fundraising proceeds, and whether Defendants provided consideration for transfers they received from the Debtors.

Where a transfer "of an interest of the debtor in property" was accomplished with actual fraudulent intent, the Code permits a trustee to avoid the transfer.  11 U.S.C. § 548(a)(1)(A).  To satisfy Rule 9(b), the Trustee must make a "particularized showing of the circumstances constituting fraud . . . ."  Fed. R. Civ. P. 9(b); Fed R. Bankr. P. 7009.  But, malice, intent or knowledge may be alleged generally.  *Id.*  In determining intent, courts looks to the badges of fraud, which include:

> (i) the relationship between the debtor and the transferee;
> (ii) consideration for the conveyance; (iii) insolvency or
> indebtedness of the debtors; (iv) how much of the debtor's estate
> was transferred; (v) reservation of benefits; control or dominion by
> the debtor over the property transferred; and (vi) secrecy or
> concealment of the transaction.

*In re Hechinger Inv. Co., of Del.*, 327 B.R. 537, 551 (D. Del. 2005), *affd on other grounds*, 278 Fed. Appx. 125 (3d Cir. 2008).

A review of the paragraphs cited by the Trustee that purportedly allege actual fraud reveals they contain the following:

> Paragraph 15 - a statement regarding the poor condition of the Debtors' books and records and the failure of the Debtors to provide the Trustee with a full set of records;
>
> Paragraphs 24 through 29 – statements regarding alleged actions of the boards of directors to force shareholders to make capital contributions, alleged representations made by Arif on SEC filings regarding revenues from those capital contributions amounting to between $5 million and $25 million, and the Debtors' failure to disclose the whereabouts of those capital contributions (the Fundraising Proceeds);
>
> Paragraph 39 – a statement that Innovation transferred funds to Arif for his benefit; and
>
> Paragraphs 72 through 82 - statements that allege, "to the extent that," (i) Arif was not owed funds and received them or, (ii) the Defendants caused the Fundraising Proceeds to be transferred to or for the benefit of an entity other than the Debtors, they were done with the intent to defraud or for less than reasonably equivalent value. These allegations are followed by a general recitation of the necessary elements and conclusory allegations of actual and constructively fraudulent transfers.

(Amend. Compl., ¶¶ 15, 24-29, 39, 72-82)

Indeed, the allegations of actual fraud lack specificity and are, at best, speculative. Even providing for a more flexible application of Rule 9(b) in light of the inadequate books and records provided by the Debtors, the Court cannot find the allegations of actual fraud reach the requisite level of particularity required by Rule 9(b). The only allegation of truly fraudulent or dishonest behavior by the Defendants involves Arif's statement on SEC documents which, even if true, does not involve a transfer of the Debtors' property, but a statement to an unrelated third-party entity regarding the Debtors' property. This does not rise to the heightened pleading standard of Rule 9(b).

Similarly, the enumerated badges of fraud are insufficient. The Amended Complaint does set forth factual allegations of the relationship between the Debtors and Defendants. This relationship is undisputed by the Defendants. The Amended Complaint also makes allegations

with respect to the consideration received, but these allegations are hollow.  They lack factual

support and fail to identify the alleged transfers or transactions.[9]  With regard to the Debtors'

insolvency, the Amended Complaint makes only bald allegations without factual support and is

refuted by the Debtors' statements made in connection with the loan from Square 1 Bank.[10]

There are no allegations that the amount transferred was a substantial portion of the Debtors'

estate.   Similarly, the Amended Complaint contains no allegations that the Debtors or

Defendants retained control over the property transferred or attempted to conceal the transaction,

if in fact one took place.   The Amended Complaint includes allegations that the books and

records fail to include details regarding the funds raised from shareholders and the belief that the

statements made to the SEC were knowingly false.   (Amend. Compl. ¶¶ 15, 24-29)   These

allegations fundamentally contradict themselves and show that the Trustee has little or no factual

basis to sustain an action for fraud under the heightened pleading standard of Rule 9(b) requiring

a "particularized showing of the circumstances constituting fraud . . . ."

> **b.**   **Whether the Amended Complaint Alleges Insolvency at Time of Transfers**

The Defendants argue that the Amended Complaint only pleads insolvency at the time of

filing and fails to include sufficient allegations of insolvency at the time of transfer.  The Trustee

argues that the Amended Complaint contains sufficient allegations of insolvency at the time of

the transfers in paragraphs 77 and 81.  Paragraph 77 alleges that the Debtors made transfers at a

time when, based on the books and records available to the Trustee, the Debtors were insolvent.

Paragraph 81 contains a similar allegation for purposes of fraud under the New Jersey statute.

The Defendants counter by relying on the Square 1 Loan Agreement of July 30, 2010,

which states that each Debtor "is able to pay its debts (including trade debts) as they mature; the

---

[9] *See infra* Part IV.c.
[10] *See infra* Part IV.b.

fair saleable value of each [Debtor's] assets (including goodwill minus disposition costs) exceeds

the fair value of its liabilities; and no [Debtor] is left with unreasonably small capital after the

transactions contemplated by this Agreement."   They argue that the Debtors' representation

directly refutes the Trustee's conclusory allegations, rendering them insufficient and mandating

dismissal.

In reviewing the Amended Complaint, the Trustee alleges that the Debtors were insolvent

at least as of July 15, 2010.  (Amend. Compl., ¶¶ 30, 31)  It appears that the allegation is based

"[u]pon information and belief," presumably based on the Debtors' books and records. (*Id.*)

There are no facts to support these allegations other than a statement that the Debtors were

insolvent at the time of their petition and were operating at a loss during the preference period.

(Amend. Compl., ¶ 67)  By contrast, the statements made by the Debtors in the loan documents

demonstrate that the Trustee cannot sustain an action where it must rely on a presumption of

insolvency.

In light of the heightened pleading standard of Rule 9(b), even with a relaxed application,

the Trustee fails to sufficiently allege insolvency at the time of the transfer, a fundamental

element for a fraudulent conveyance cause of action.   While the inability to reconstruct the

Debtors' financial condition at the time of the transfers may be the product of the Debtors'

poorly maintained books and records, and debtors should certainly not benefit from such a

practice, particularly during challenging times, the Trustee has been in possession of the books

and records for two years and has not sought to engage in additional discovery to augment or

supplement them. The Court is disinclined to afford the Trustee even more time to attempt to

construct a foundation for what appears to be strained allegations of fraud.

c.      **Whether the Complaint Alleges the Debtors Received Less than Reasonably Equivalent Value**

Paragraph 77 of the Amended Complaint, building on the allegations set forth in paragraphs 75 and 76, alleges that the Debtors received less than reasonably equivalent value "to the extent" that excess revenue or Fundraising proceeds were transferred or not disclosed on the Debtors' petitions.  The Defendants argue that this is insufficient to meet the heightened pleading requirements of Rule 9(b) and, as such, a necessary element of a constructive fraud claim under 11 U.S.C. § 548(a)(1)(B) is not met.  The Trustee counters that it has supported its allegations because "the whereabouts of the Fundraising proceeds are unaccounted for and the books and records of the Debtors do not show that Defendants gave equivalent value for any transfer they received."  (Trustee's Opp'n, ¶ 58)

The Trustee's argument is unpersuasive.  The Amended Complaint fails to include, and the Trustee is unable to direct the Court to, any specific allegations regarding actual transfers and whether or not any consideration was provided to the Debtors.  Notably, the allegations of fraud are preceded by the language "to the extent," indicating that the Trustee is merely hypothesizing alleged fraudulent transfers of excess revenues or Fundraising proceeds that were unreported. The Trustee fails to allege any actual transfers for which the Court could determine whether the Debtors received reasonably equivalent value in return.  With respect to the Trustee's repeated reliance on the Debtors' poorly maintained books and records, it has had ample time to investigate.  The allegations as set forth in the Amended Complaint essentially recite only the necessary elements of section 548 and offer no factual support, thereby, failing to meet the pleading standards of Rule 8 as applied to claims for constructively fraudulent transfers.

## V.       Counts VII Through X

Counts VII through X seek relief in the event that any of the above causes of action are successful.   Count VII seeks an accounting of the Debtors' business transactions without limitation including, the existence and use of environmental tax benefits and other credits that the Debtors had access to through their involvement with biodiesel fuel.   (Amend. Compl., ¶¶ 86-88)   Count VIII seeks recovery of all property that was the subject of any preferential or fraudulent transfers from the Defendants.  (Amend. Compl., ¶¶ 90-92)  Count IX seeks the disallowance of the Defendants' claim pursuant to 11 U.S.C. § 502(d) based on the Defendants' liability for any preferential or fraudulent transfers.  Count X asserts that the Trustee is entitled to legal fees pursuant to Federal Rule of Bankruptcy Procedure 7008(b).

Counts VII through X are derivative causes of action and, therefore, do not survive the motion to dismiss following the dismissal of the preceding causes of action.

## Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss the Trustee's Amended Complaint is hereby granted.


*s/  Donald H. Steckroth*

_____

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE


Dated: July 22, 2013